KENNY et al. *v.* MONAHAN.

(Supreme Court, Special Term, Kings County. August 24, 1899.)

1. BUILDING CONTRACTS—CHANGING SPECIFICATIONS—LIABILITY OF CONTRACTOR.
   In an action against the owner of a building to recover on a building contract, the defendant could not be allowed a counterclaim on the ground that "bridle irons" had been substituted for "angle irons," called for by the specifications, where it appeared that the former was as serviceable as the latter.

2. SAME—TIME OF COMPLETION—WAIVER BY OWNER.
   Where a building contract provided that the work should be completed at a certain time, but a change was made in the specifications with the consent of the owner, which occasioned delay, so that the work was not completed by the agreed time, and the owner did not notify the contractors that he should claim damages for the delay until a brief time before completion of the work, he was estopped to claim damages.

3. SAME—COUNTERCLAIM—ARBITRATION.
   Where, in an action against the owner of a building to recover on a building contract, it appeared that while the owner was conducting his business on the first floor of the building being altered his stock was damaged through water coming through the roof by reason of the negligence of the contractors, and that arbitrators had decided on the amount of damages so suffered by the owner, the decision of the arbitrators, whether binding on the owner or not, would be followed by the court in determining the amount of counterclaim to which the owner was entitled.

Action by Christopher J. Kenny and another against Hugh V. Monahan. Judgment in favor of plaintiffs.

For opinion in department, see 66 N. Y. Supp. 10.

D. F. Manning, for plaintiffs.
Edward M. Grout, for defendant.

SMITH, J. The plaintiffs have sustained, by a preponderance of evidence, their claim that they completed their work in accordance with the contract, and in a substantial and workmanlike manner, and that their claim for extra work should be allowed. The contract provided that the work should be done in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the architect, to be testified by a certificate under his hand. The architect furnished the required certificate, and testified himself upon the trial that the performance of the contract was in accordance with the plans and specifications thereof, and in a substantial and workmanlike manner. The variation in these specifications of which the defendant most seriously complains is the substitution of angle irons for bridle irons. I find that such substitution was done under the direction of the architect, and he testified that the defendant agreed to the change. Whether he did or not, I do not consider that material, because upon the evidence I find that the defendant was not damaged by the substitution; for, all things considered, angle irons make just as good a job as bridle irons.

The defendant interposes two substantial counterclaims—First, for damages for delay in the completion of the building beyond the time specified in the contract. The contract provided that the work should be completed by September 25th. The work was not actually com-

pleted until December 24th. From a consideration of the conduct of the parties during the whole period of the work, my judgment is that time was not considered of the essence of the contract. I think the time named for the completion of the work is a date to be aimed at, and that neither party contemplated that it was more than possible that the work should be finished at that time. But, if I am mistaken in this conclusion, I think the evidence warrants the finding that the defendant estopped himself from enforcing this provision of the contract by his conduct. As was said in the case of Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315, upon the failure of the plaintiff to perform the contract by the date fixed, the defendant might have insisted upon his strict legal rights, and then put an end to the contract; but this he did not do, but permitted the plaintiffs to continue the work, and for this reason he cannot now insist upon the delay as a defense to an action brought to recover the price of the contract. There was a change in the plans and specifications by substituting different iron girders than those originally contemplated, made with the consent of the defendant, which entailed considerable delay. The defendant did not notify the plaintiffs that he should claim damage by reason of the delay, as he should have done, until a brief time before the work was finally completed. I do not think that the defendant at that time had in mind to make any claim against the plaintiffs for damages by reason of the delay, and that his whole conduct justifies a finding upon my part that he waived the strict performance of this part of the contract.

The second substantial counterclaim argued by the defendant is for damages occasioned by the water coming in through the roof, and particularly on the night of October 12, 1898, to the injury of the stock of goods upon the floors below. The contract provided that "the contractor must at all times protect his works, and will be held responsible for any damages thereto until the completion and acceptance of the work." It was contemplated by both parties that the defendant should actually conduct his business upon the lower floors during the progress of the work. The safety of the stock was in the hands of the plaintiffs, and, in my judgment, a very high degree of care should have been exercised by the plaintiffs to insure the safety of the defendant's property. I do not think that the care exercised by the plaintiffs was quite up to the standard, and that whatever damage was sustained by the defendant by reason of water coming in through the roof on October 12th should be charged against the plaintiffs. The amount of this damage was the subject of considerable litigation upon the trial of this action. A short time after the damage was done the parties agreed to submit to three arbitrators the question of the amount of damages. The plaintiffs selected one arbitrator, the defendant another, and the two thus chosen selected a third. They met and examined the goods claimed to be damaged by the defendant, made an appraisal, and agreed that the amount of damage sustained by the defendant was $278.65. The defendant repudiated the award of the arbitrators. The plaintiffs now claim that the award of the arbitrators is binding upon the defendant. The defendant claims that the arbitration is void. From my view of the case, it is

unnecessary for me to determine whether the award is binding upon the defendant or not. I am satisfied that the arbitrators are fair-minded and competent men, and understood their business thoroughly. They made a careful and thorough examination of all the goods claimed to be damaged, and I do not think I should be justified in rejecting their estimate. I believe that their determination represents the most correct conclusion that can be arrived at in determining this dispute between the parties, and find, as did the arbitrators, that the sum awarded by them is the amount that should be allowed to the defendant for his damage. Some items of damage claimed by the defendant are not passed upon by the arbitrators. They are as follows: The expense of removing the water from the floor, $75; the expense of repapering the walls and ceilings, $27.50; the expense of repairing the wood ceilings, $25; and the expense of whitewashing the walls and piers of the cellar, $5. These amounts I also allow to the defendant, as claimed by him.

My conclusion is that the plaintiffs are entitled to judgment against the defendant for the amount claimed by them as the balance due on the contract and for extra work claimed, less the amount of the counterclaims of the defendant, which I find have been established at the sum of $411.15. The plaintiffs are also entitled to the costs of the action, but I award no extra allowance.